IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA E. SWANSON ) | |
| ) | |
| ) | |
| Plaintiff, ) | No. 16 C 7890 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| BAKER & MCKENZIE, LLP and CHANEL ) | |
| JOHNSON-BELL ) | |
| , ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 5, 2016, *pro se* Plaintiff Gloria Swanson sued her former employer, Baker & McKenzie, LLP ("Baker") and Chanel Johnson-Bell, one of its Human Resources ("HR") managers. Swanson alleges that certain statements made by Baker HR personnel to a reference-checking agency she hired constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, Section 704 and 42 U.S.C. § 1981, and defamation. (Dkt. 1.) Defendants have moved to dismiss, asserting that Plaintiff is collaterally estopped from bringing her claims due to her litigation of a similar suit in 2012, or, in the alternative, has otherwise failed to state a claim. For the following reasons, Defendants' Motion to Dismiss [10] is granted.

**FACTUAL ALLEGATIONS**

Swanson, an African American, was employed by Baker as a legal assistant between February 1990 and May 1995. (Dkt. 1 ¶ 14.) Swanson left Baker after she was denied a transfer of assignment even though Baker permitted many white secretaries to change assignments. (Dkt. 1 ¶ 35.) Swanson also alleges that she was verbally abused by an attorney during her time at Baker. (*Id.* at 5 n.1.) To settle her claims of abuse and discrimination against Baker, as part of her departure, Swanson signed a Termination Agreement/Settlement Agreement, which precluded her from filing a U.S. Equal Employment Opportunity Commission (EEOC) complaint for alleged discrimination against Baker. (*Id.* ¶ 30.)

1

Following her departure from Baker, Swanson worked at two other law firms, including one job that lasted 14 years. (*Id.* at ¶¶ 8, 36.) In March 2011, Swanson again found herself unemployed. (*Id.*) In 2012, Swanson hired Allison & Taylor, an employment reference-checking firm to contact her former employers to determine why she was not being hired as a legal secretary despite "testing excellently, and interviewing well with 30 years of legal secretarial experience." (*Id*. ¶ 6.) On July 18, 2012, Baker Human Resources personnel were contacted by Allison & Taylor to check Swanson's employment history. (*Id*. ¶ 5.) Baker HR personnel informed the reference-checking agency that they could not locate Swanson's employment records. (*Id*. ¶ 6.) Baker corrected the error in September and October 2012, by providing Swanson with written confirmation that she had been an employee. (*Id.* ¶ 5.) Swanson filed an EEOC complaint and then sued Baker and certain HR personnel in October 2012, alleging that their statements to the reference checking firm that they could not locate her personnel history was retaliatory for her 1995 complaints and also constituted defamation (the "2012 Lawsuit"). (*Id.* ¶¶ 7, 15.) Judge St. Eve dismissed her complaint, finding that her retaliation claim failed because Ms. Swanson failed to allege an adverse employment action and she could not establish a causal link between her 1995 complaint and the alleged retaliatory comments. *Swanson v. Baker & McKenzie, LLP*, No. 12 C 8290, 2013 WL 1087579, at *3, 7 (N.D. Ill. Mar. 14, 2013), *aff'd,* 527 F. App'x 572 (7th Cir. 2013). The court found that her defamation claim failed because (1) Swanson had not sufficiently alleged that the statement was false; (2) the statement could be reasonably capable of an innocent construction; and (3) the statement had not been published to any third party. *Id.* The Seventh Circuit affirmed. *Swanson v. Baker & McKenzie*, LLP, 527 F. App'x 572, 574 (7th Cir. 2013); (*id.* ¶ 15-16).

Following the events that led Swanson to sue Baker in 2012, she eventually found employment at a law firm for four months in 2013 and then was hired as an Executive Assistant to a CEO of a health care recruiting organization, where she was employed until September 2015. (*Id.* ¶ 8.) Finding herself again unemployed and having difficulties finding employment (despite "top notch" skills and experience), in January 2016, Swanson again hired a reference-checking firm (CheckYourReference.com) to ascertain why she was having difficulty obtaining employment. (*Id.* ¶ 7.) When contacted by the reference-

checking firm, Baker HR personnel again informed the agency that it had no record of Swanson ever working at the firm. (*Id.* ¶ 18.) Swanson then reached out to Baker regarding the information the firm provided to CheckYourReference.com, and Johnson-Bell, an HR manager, immediately corrected the issue by writing a letter to CheckYourReference.com and provided Swanson with a letter verifying her employment at Baker. (*Id.* ¶ 19.) Still having difficulty finding employment, in May 2016, Swanson hired International Counterintelligence Service, Inc. ("ICS"), to contact her former employers to determine if she was being "blackballed." (*Id.* ¶ 21.) ICS purportedly left three messages with Johnson-Bell but did not receive a call back. (*Id.* ¶¶ 24-25.) Swanson then called Johnson-Bell and asked why she had not returned ICS's calls. (*Id.*) Johnson-Bell informed Swanson that she had not received ICS's calls, offered to call them for Swanson, and reminded Swanson that she had previously provided her with a letter confirming her employment at Baker. (*Id.* ¶ 25.) Without filing an EEOC complaint, Swanson again sued Baker, alleging that Baker's 2016 interactions (or lack thereof) with the reference-checking firms were retaliatory and violated Title VII and Section 1981, in addition to being defamatory.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* This requires enough factual content to create a reasonable expectation that discovery will reveal evidence of wrongdoing. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). For purposes of determining whether a complaint states a claim, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

*Pro se* pleadings are to be held to less stringent standards than those prepared by counsel. *See Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981). Thus, the Court has a responsibility to construe these complaints liberally, and give the plaintiffs' allegations "fair and meaningful consideration." *See Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987) (citation omitted). Pro se litigants,

however, "are not exempt from procedural rules." *Jones v. Mem'l Hosp. of South Bend, Inc.*, 301 Fed. Appx. 548, 548 (7th Cir. 2008).

## DISCUSSION

### I. Collateral Estoppel

Defendants argue that Plaintiff's claims are collaterally estopped[1] because in regards to the 2012 Lawsuit, "[t]his District has already ruled that Plaintiff cannot state a retaliation claim or a defamation claim against Defendants based on Baker's statement to a reference-checker retained by Plaintiff that Baker was unable to locate Plaintiff's employment records." (Dkt. 11 at 6.) In response, Plaintiff argues that collateral estoppel does not apply because she is litigating a "'new' claim of defamation that happens to be reoccurring after previous litigation." (Dkt. 17 ¶ 9.)

Issue preclusion or collateral estoppel "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). "In significant part, preclusion doctrine is premised on an underlying confidence that the result achieved in the initial litigation was substantially correct." *Bravo-Fernandez v. United States*, No. 15-537, 2016 WL 6952648, at *4 (U.S. Nov. 29, 2016). This confidence is often warranted when there has been appellate review. *Id.*

---

[1] Collateral estoppel is an affirmative defense and properly asserted in a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). Defendants', however, asserted their collateral estoppel defense in their 12(b)(6) motion. The Seventh Circuit, has found that when a district court has before it all that is "needed in order to be able to rule on the defense", and the plaintiff fails to complain about the issue, then the technical error of asserting collateral estoppel in a 12(b)(6) motion "is of no consequence." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir.), *cert. denied,* 134 S. Ct. 2733 (2014) (affirming dismissal pursuant to the similar doctrine of claim preclusion.) Additionally, regardless of the procedural mechanism employed, "a court may raise [collateral estoppel] *sua sponte,* as here, if it is plainly apparent from the face of the complaint." *Harris v. Huston*, 553 F. App'x 630, 631 (7th Cir. 2014).

Collateral estoppel prevents the relitigation of an issue when four conditions are met. First, "[t]he party against whom the issue had been resolved must have had, first, a 'full and fair opportunity' to litigate the issue in the previous suit." *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013) (citation omitted). Second, the issue sought to be precluded must be identical to an issue involved in the prior litigation. *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989). Third, "the issue must have been actually litigated and decided on the merits in the prior litigation" and fourth, "the resolution of that issue must have been necessary to the court's judgment." *Id. See In re Catt*, 368 F.3d 789, 791–92 (7th Cir. 2004).

First, "[t]he requirement that a party be given a full and fair opportunity to litigate a claim is satisfied 'if the parties to the original action disputed the issue and the trier of fact resolved it.'" *See, e.g., Trepanier v. City of Blue Island*, No. 03-C-7433, 2008 WL 4442623, at *4 (N.D. Ill. Sept. 29, 2008), *aff'd*, 364 F. App'x 260 (7th Cir. 2010) (citation omitted). "[A] pro se party is given a full and fair opportunity to litigate [her] case when [s]he is afforded the minimum procedural due process requirements."[2] *Id.* Swanson does not argue that she was precluded by the district court in the 2012 Lawsuit from having a full and fair opportunity to litigate her claims, nor does she allege that she was deprived of procedural due process. An examination of the docket of the 2012 lawsuit confirms that Swanson had a full and fair opportunity to litigate the issues in the previous suit. Her initial suit was dismissed based on its lack of merit, not a procedural defect and she appealed the adverse decision on the merits. *See Gray*, 885 F.2d at 406 ("a full and fair opportunity to litigate includes the right to appeal an adverse decision") (quotation omitted).

Second, despite Swanson's contentions that her claims are completely "new", the central allegation in her current suit – whether Baker's statements to a reference-checking firm hired by Swanson that they could not locate the records to confirm her employment constitute retaliation in violation of Title VII and Section 1981 or defamation under Illinois law Swanson's 2012 lawsuit - are identical to the issues resolved in the 2012 Lawsuit. The only difference is the substitution of one reference-checking

---

[2] The fact that Swanson has litigated both suits *pro se* does not prevent the Court from applying issue preclusion because insulating *pro se* litigants "the collateral estoppel doctrine . . . is absurd." *DeGuelle*, 724 F.3d at 938.

firm for another and one Baker HR employee for another.  As a result, the "changed circumstances are not material, and therefore do not amount to controlling facts, [so] collateral estoppel remains applicable." *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974) (also noting that precluding the application of collateral estoppel for any factual difference would undermine the doctrine because "[r]are would be the case in which counsel could not conjure up some factual element that had changed between adjudications"); *see also Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) (finding that issue preclusion did not apply because issues that involved facts that were not "identical in all *material* aspects" precluded the application of collateral estoppel) (emphasis added).  Swanson's allegations regarding Baker's statements to CheckYourReference.com are not materially different from those she made in the 2012 Lawsuit.  In the 2012 Lawsuit, Swanson alleged that Baker told the reference-checking firm that "they could not find Gloria Swanson in their system" and that they did not have Swanson in the system. (Dkt. 11-1 ¶¶ 7-8.)  In the current suit, Baker personnel allegedly told the reference-checking agency that "that they had no record of Swanson working there."  (*Id.* ¶ 18.)

Swanson is correct, however, that some of her allegations in the current litigation are distinct from the allegations in the 2012 Lawsuit, specifically that Johnson-Bell's failure to return ICS's calls and then lied to Swanson about receiving the calls constituted defamation and retaliation.  These issues are not identical to any of the issues litigated in the 2012 suit and are not collaterally estopped.  They are, however, dismissed for the reasons set forth below because they fail to state a cognizable claim for relief.

Third, there is no doubt that the issues were actually litigated and decided on the merits in the 2012 litigation.  Plaintiff's complaint was dismissed by Judge St. Eve following a full briefing of the issues and affirmed by the Seventh Circuit after additional briefing.  *See Swanson* 527 F. App'x 572. Dismissals on the merits have "collateral estoppel effect over all issues actually litigated." *Unity House, Inc. v. First Commercial Fin. Grp., Inc.*, 175 F.3d 1022, at *2 (7th Cir. 1999).

Fourth, resolving whether statements made by Baker to the reference-checking agency were retaliatory or defamatory was necessary to the court's decision in the 2012 Lawsuit.  *See*, *e.g.*, *Swanson*, 2013 WL 1087579.  There, Judge St. Eve found that Swanson failed to state a retaliation claim because

6

she did not adequately allege an adverse employment action or a "causal link between her 1995 complaint of discrimination and the alleged adverse action," nor did she allege that Baker, at the time of the alleged retaliation, knew about the 1995 complaint. *Id.* at *3. The court also dismissed her defamation claim because she did not offer any non-speculative allegations that Defendants' statements were false, that the statements would have damaged or prejudiced her trade, and that they were not actionable because they were capable of innocent construction. *Id.* at *6-7. After the dismissal of her suit, Plaintiff appealed and the Seventh Circuit affirmed the decision of the district court. *Swanson*, 527 F. App'x at 573 (affirming dismissal of retaliation claim because Plaintiff did not allege adverse employment action when she alleged that Baker told reference checking firm that it could not locate her employment records because "this account does not portray retaliation of any kind" and affirming dismissal of defamation claim because Swanson failed to allege that Baker made a false statement that was published to a third party).

As a result, Swanson is collaterally estopped from alleging that Baker defamed her and retaliated against her by telling a reference-checking firm that they could not locate her employment records.

## II.     Title VII Claim

The aspects of Swanson's Title VII claim that remain are dismissed because she did not exhaust her administrative remedies. Before filing Title VII claims in federal court, plaintiffs must first file a charge of discrimination with the EEOC within 300 days of the unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1); *see also Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). Title VII also requires that plaintiffs obtain a right-to-sue letter from the EEOC before filing their employment discrimination suit in federal court. 42 U.S.C. § 2000e-5(f)(1). *Arrigo v. Link*, No. 13-3838, 2016 WL 4621044, at *3 (7th Cir. Sept. 6, 2016); *Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). "If plaintiffs could sue before [exhausting their administrative remedies], the time of the courts and of lawyers would be wasted with cases that ended up being resolved or abandoned at the administrative level." *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 701 (7th Cir. 2003) (affirming dismissal of retaliation claim because plaintiff "failed to file a complaint of

retaliation with the EEOC."). The purpose of administrative exhaustion is to provide "the employer with notice about the particular challenged conduct and provides an opportunity for settlement of the dispute." *Graham v. AT&T Mobility, LLC*, 247 F. App'x 26, 29 (7th Cir. 2007).

Swanson concedes that she "did not file an EEOC Complaint against Defendants for her current lawsuit" but argues that she should be excused because "some district courts have held that there are exceptions to the exhaustion principle" where agency action would be futile. (Dkt. 17 ¶ 22.) Plaintiff, however, fails to explain why exhaustion would be futile or cite any district court opinions in support of her contention. Furthermore, the Seventh Circuit opinion that she does cite, does not implicate Title VII's exhaustion requirements. *See Jewel Companies, Inc. v. FTC*, 432 F.2d 1155, 1159 (7th Cir. 1970) (analyzing whether U.S. District Court had jurisdiction over different aspects of lawsuit filed by party seeking to enjoin the FTC from conducting proceedings). Furthermore, Plaintiff cannot plead ignorance to Title VII's administrative strictures as she successfully filed an EEOC charge prior to filing the 2012 Lawsuit. In short, Plaintiff has not submitted any legal or factual justification to excuse her failure to exhaust her administrative remedies and as a result, her Title VII claim is dismissed.

## III.     Retaliation

Swanson alleges that: (1) Baker's statement to the reference-checking firm that they had no record of Swanson ever working there[3]; (2) Johnson-Bell's failure to answer ICS's calls regarding her employment; and (3) Johnson-Bell's denial of receiving ICS's calls constitutes "retaliation against a black secretary protesting the discrimination against her" in violation of Section 1981[4] and Title VII.[5] (Dkt. 1 ¶ 33.)

---

[3] As discussed above, this claim is collaterally estopped. Nevertheless, even if collateral estoppel does not apply, this allegation fails to support a claim.
[4] Although Swanson uses the term "discrimination" several times in her complaint, often in conjunction with her claim for retaliation, she has failed to assert any cognizable claim for direct discrimination under Title VII or Section 1981.
[5] As detailed below, even if her failure to exhaust her administrative remedies were to be excused, Swanson's Title VII claim fails to state a claim. Section 1981 claims are analyzed in the same manner as claims brought pursuant to Title VII of the Civil Rights Act. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *see also Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir.2006) (retaliation claims under Section 1981 and Title VII are subject to the same methods of proof and analysis).

Similar to Title VII,[6] "[t]o state a retaliation claim under § 1981 based on events occurring in the workplace, an employee must show that she suffered a materially adverse action because she engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016), *cert. denied*, No. 16-442, 2016 WL 5816674 (U.S. Nov. 28, 2016); *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1961 (2008).

Section 1981 "forbids *any* retaliatory actions that are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination,' and those retaliatory actions need not be directly 'related to employment or occur in the workplace' except that their harm must have been caused by contract– or employment-related events." *Shott*, 829 F.3d at 497 (citation omitted). Swanson's retaliation claim fails because she has failed to adequately allege an adverse action by Baker and any causal connection linking that adverse action to the protected activity.

An "adverse employment action" is one that is likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006). "In the context of negative employment references" the Seventh Circuit has defined an adverse employment action to mean "the dissemination of false reference information that a prospective employer would view as material to its hiring decision." *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 558 (7th Cir. 2008) (quoting *Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006).

First, Swanson's allegations that Baker's HR personnel did not return ICS's phone calls and that Johnson-Bell denied receiving voicemails from ICS do not implicate the dissemination of any reference information whatsoever, let along false information. Second, even if not collaterally estopped, Swanson's allegation that Baker informed a reference-checking firm that she hired that it could not locate records of Swanson working at the firm does not constitute false reference information. Swanson does not allege

---

[6] *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee or a former employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To successfully allege a Title VII retaliation claim, plaintiffs must assert "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.").

that Baker told the reference-checking agency statements that she never worked at the firm but rather that Baker could not locate records of her employment. (Dkt. 1 ¶ 18.) Furthermore, Swanson concedes that Baker corrected the oversight as soon as the issue was brought to the firm's attention. *See Matthews*, 534 F.3d at 559 (affirming the finding of no adverse employment action for one plaintiff where "the company initially denied the fact of Matthews's employment [because], it corrected its mistake" and another defendant where there was no evidence that the defendant ever spoke with a prospective employer).

Furthermore, Swanson's allegations relate to interactions between Baker and reference-checking agencies Swanson hired, not prospective employers. As a result, there was no dissemination of any reference information to any prospective employer. *See Swanson,* 2013 WL 1087579, at *3 ("Not only are these statements not negative references, but they were not statements made to a prospective employer. Indeed, Ms. Swanson does not allege any facts regarding any negative reference, or any statement at all, that Defendants made to any prospective employer.").

Additionally, even assuming that Swanson plausibly alleged an adverse employment action (which she has not), she has failed to allege any causal link between Baker's contacts with the reference-checking firms and either her discrimination complaint to Baker in 1995 or the 2012 Lawsuit.[7] First, Swanson has not alleged that the Baker HR employees that allegedly retaliated against her were even aware of her claims of discrimination in 1995 or her 2012 Lawsuit. In fact, Swanson admits that she "advised Johnson-Bell [Baker's HR manager] about the 2012 lawsuit" after the allegedly retaliatory action already occurred and includes no allegations that any of the relevant HR personnel were aware of her 1995 complaints of discrimination. (Dkt. 1 ¶ 18.) To properly allege the causal link in a retaliation claim, it is necessary to show that the employer was aware of the protected activity. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (plaintiff failed to show causal connection necessary for retaliation claim because plaintiff did not show that employer was aware of prior grievance).

---

[7] Swanson does not explicitly tie Baker's interactions with the reference-checking firms to any protected conduct, although she comes closest to alleging that they were in retaliation for her 1995 complaints for discrimination. (*See* Dkt. 1 ¶ 35.) Nevertheless, her complaint is replete with references to the 2012 Lawsuit and the Court will analyze her retaliation claims as involving both the 1995 Complaint and the 2012 Lawsuit.

Second, a long gap between the filing of a complaint and the allegedly retaliatory act "undercuts an inference of causation." *McGuire v. City of Springfield, Ill.*, 280 F.3d 794, 796 (7th Cir. 2002). The considerable time between Swanson's complaints of discrimination in 1995 (over 20 years) or even her original Title VII suit (4 years prior) and the alleged retaliation in early 2016, without any other allegations connecting the three, is too remote to support such an inference. *See Nehan v. Tootsie Roll Indus., Inc.*, 621 F. App'x 847, 851 (7th Cir. 2015) (finding that one year between charge of discrimination and termination did not support retaliation); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (noting that "extended time gaps alone militate against allowing an inference of causation based on suspicious timing"); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (finding two-month lapse between plaintiff's complaint and adverse employment action was "not strongly suggestive of retaliation").

## IV.     Defamation

In addition to alleging that Baker's statements (or lack thereof) to the reference-checking firms were retaliatory, Swanson also alleges that they were defamatory. "Under Illinois law, which applies here, a plaintiff must show that the defendant [1] made a false statement concerning her, [2] that the defendant made an unprivileged publication of that defamatory statement to a third party, and [3] that the plaintiff suffered damages as a result." *Swanson*, 527 F. App'x at 574. Swanson fails to allege facts in support of the first two elements of defamation.

Swanson's allegations that Johnson-Bell's lack of responsiveness to ICS and then her denials of receiving ICS's phone calls are not defamatory because these actions did not disseminate any information to a third party, let alone false information. Second, even if not collaterally estopped, "[n]othing but speculation suggests that Baker was lying when it said that it could not find her employment records." *Id.* At the time of the allegedly defamatory statements, Swanson's employment records were over 20 years old. Even though they had been the subject of a lawsuit four years prior, there is no reason to believe that Baker would necessarily retain them or that employees would be able to locate such out-of-date material. Additionally, as soon as Johnson-Bell was informed that Baker's HR personnel informed the reference-

checking agency that the firm could not locate Ms. Swanson's employment records, Johnson-Bell wrote the agency to clarify the issue, preventing any false information from being disseminated. *See Swanson*, 2013 WL 1087579, at *6.

Furthermore, "[e]ven if a statement falls into a recognized category of defamation per se, it will not be found to be defamatory if it is 'reasonably capable of an innocent construction.'" *Lott v. Levitt*, 469 F. Supp. 2d 575, 579 (N.D. Ill. 2007) (citation omitted), *aff'd*, 556 F.3d 564 (7th Cir. 2009). "The preliminary determination of whether a statement is capable of a reasonable innocent construction is a question of law to be resolved by the court in the first instance." *Tuite v. Corbitt*, 224 Ill. 2d 490, 509 (2006). "In considering allegedly defamatory statements under the innocent construction rule, we reemphasize that courts must interpret the words "as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader." *Id.* at 511–12. "The innocent construction rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning." *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 90 (1996). Especially when considering the remedial action taken by the firm, "the statement that Baker could neither confirm nor deny her employment is not defamatory, because it is capable of an innocent construction" *Swanson*, 527 F. App'x at 574. Additionally, Johnson-Bell's alleged lack of responsiveness to ICS and then her denial to Swanson that she received the phone calls are also capable of innocent construction, considering Johnson-Bell's offer to call ICS and the fact that she provided Swanson with a letter confirming her employment at Baker.

Lastly, the allegedly defamatory statements were made to Swanson or her agents (the reference checking firms that she hired), "which do[] not qualify as [] third part[ies] for defamation purposes." *Id.* As such, Swanson failed to allege that any statements made by Baker (defamatory or not) were disseminated to any third party.

**V.     Sanctions**

In addition to seeking dismissal of Plaintiff's complaint, Defendants also seek sanctions against Swanson, arguing that her complaint is meritless and constitutes harassment. (Dkt. 11 at 3.) The Court

declines to impose sanctions but warns Ms. Swanson that further attempts to reassert the same allegations will result in a referral to the Executive Committee for filing restrictions and the potential for sanctions.[8]

## CONCLUSION

For the reasons stated herein, Plaintiff Gloria Swanson's complaint is dismissed.

Date: 12/14/2016

Virginia M. Kendall
U.S. District Court Judg

---

[8] The Court has performed a review of the dockets in other cases, noting that Swanson has filed numerous cases in the Northern District of Illinois since 2008, many of which have been dismissed as meritless. *See Swanson v. Horseshoe Hammond, LLC*, No. 1:08-cv-07410 (N.D. Ill.); *Swanson v. Citi*, No. 09 C 2344 (N.D. Ill.); *Swanson v. Hammond Police Dept.*, No. 10 C 4309 (N.D. Ill.); *Swanson v. Baker & McKenzie, LLP*, No. 12 C 8290 (N.D. Ill.).